**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------- x
                    :

ODS CAPITAL LLC, Individually and on
Behalf of All Others Similarly Situated,

            Plaintiffs,

      vs.

CHANGYOU.COM LIMITED, SOHU.COM
LIMITED, SOHU.COM (GAME) LIMITED,
CHANGYOU MERGER CO. LIMITED,
XIAO CHEN, CHARLES ZHANG, JOANNA
LV

            Defendants.

---------------------------------------------------- x

Case No.

**CLASS ACTION**

COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Plaintiff ODS Capital LLC ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based on personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of earnings call transcripts of and U.S. Securities and Exchange Commission ("SEC") filings by Changyou.com Limited ("Changyou" or the "Company").

## INTRODUCTION

1.      This class action is brought by Plaintiff on behalf of itself and the other former ordinary stockholders and owners of American Depository Shares ("ADS") of Changyou, except Defendants (defined below) and their affiliates, against Defendants for their violations of Sections 10(b), Section 13(e), and  20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and regulations promulgated thereunder, in connection with a merger between Changyou and Changyou Merger Co. Limited ("Merger Co.").  It is brought on behalf of all persons and entities that either held publicly-traded Changyou ADSs on April 23, 2020 or sold such shares during the period between February 14, 2020 and April 23, 2020 (the "Class Period") and were harmed by Defendants' actions.

2.       Changyou was a publicly-traded gaming company that offered personal computer and phone application games to consumers in China.  In 2009, Changyou conducted a public offering of ADSs in the United States.  At all relevant times, Changyou had a dual-class stock structure whereby Class A shares were entitled to one-vote-per-share and Class B shares were entitled to ten-votes-per-share.

3.      Sohu.com was Changyou's controlling stockholder at all relevant times.  As of February 2020, Shou.com beneficially owned the entirety of the outstanding Class B shares

(70.3 million) and some Class A shares (1.5 million), resulting in Sohu.com controlling 95.2% of the outstanding votes but only 66.9% of the economic interest in Changyou.

4.      On January 24, 2020, Changyou, Sohu.com (Game) Limited ("Sohu Game"), Sohu.com, and Merger Co. entered into an agreement and plan of merger (the "Merger Agreement"), whereby Merger Co. agreed to merge with and into Changyou (the "Merger"). As part of the Merger, Shou.com agreed to acquire the remaining shares it did not own in Changyou for $5.40 per Class A share and $10.80 per ADS.

5.      On February 14, 2020, Changyou, Sohu.com, Sohu Game, and Merger Co. jointly filed a Rule 13E-3 Transaction Statement under Section 13(e) of the Securities Exchange Act (the "Transaction Statement").  The Transaction Statement contained false and misleading statements regarding the existence of dissenters' rights (also known as appraisal rights) pursuant to Cayman Islands law.

6.      The Transaction Statement stated in no uncertain terms:

**No Dissenters' or Appraisal Rights**

As the Merger is a short-form merger under section 233(7) of the Cayman Islands Companies Law, and the vote of holders of the Company's Shares (including ADSs) is not required to complete the Merger, the Unaffiliated Security Holders will not be able to exercise dissenters' rights such as are afforded to shareholders of Cayman Islands companies pursuant to Section 238 of the Cayman Islands Companies Law with respect to mergers for which a shareholder vote is required. A copy of Section 238 of the Cayman Islands Companies Law is attached as Exhibit (f)(2) to this Transaction Statement for the information of the Unaffiliated Security Holders.

7.      The Transaction Statement also included a Question & Answer to the same effect:

Q:      **Will shareholders be able to assert dissenters' rights (also referred to as "appraisal rights") in connection with the Merger?**

A:        No. Because the Merger will be a "short-form" merger in pursuant to section 233(7) of the Cayman Islands Companies Law and no shareholder vote on the Merger will be held, holders of Class A Ordinary Shares (including holders of Class A Ordinary Shares represented by ADSs) will not be able to exercise dissenters' or appraisal rights under section 238 of the Cayman Islands Companies Law, which applies to mergers under the Cayman Islands Companies Law in which a shareholder vote is held.

8.     The Transaction Statement is false and misleading because it provided no support for such conclusion and it is at odds with the text of the relevant Cayman Islands statute regarding appraisal rights. Moreover, the Transaction Statement failed to disclose other rights that may be available to Changyou shareholders under Cayman Islands law, in clear violation of the federal securities laws.

9.     On April 17, 2020, the Merger closed without the truth being revealed. Pursuant to the Merger Agreement, Sohu Game, through its depositary institution acting as paying agent, purchased all outstanding Changyou ADS shares for $10.80 per share on April 23, 2020.

10.    This Action seeks to remedy the harm to Changyou ADSs holders and sellers during the Class Period relating to the numerous material misstatements and omissions alleged above and herein. For the reasons alleged herein, Plaintiff and the Class were harmed by Defendants violations of the federal securities laws.

### JURISDICTION AND VENUE

11.    The claims asserted herein arise under (i) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 § 78j(b), Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5; and (ii) Section 13(e) of the Exchange Act, 15 U.S.C. § 78m(e), Rule 13e–3 promulgated thereunder, 17 C.F.R. § 240.13e–3 ("Rule 13e-3").

3

12.     This Court has subject matter jurisdiction over this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

13.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this District.  Further, Changyou's ADS agreement consents to jurisdiction in this district.  Section 7.7 of that agreement states that "[t]he Company hereby (i) irrevocably designates and appoints CT Corporation System located at 111 Eighth Avenue, New York, New York 10011, in the State of New York, as the Company's authorized agent upon which process may be served in any suit or proceeding arising out of or relating to the Shares or Deposited Securities, the American Depositary Shares, the Receipts or this Agreement, (ii) consents and submits to the jurisdiction of any state or federal court in the State of New York in which any such suit or proceeding may be instituted, and (iii) agrees that service of process upon said authorized agent shall be deemed in every respect effective service of process upon the Company in any such suit or proceeding."

14.     In connection with the acts alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**<u>PARTIES</u>**

15.     Plaintiff ODS Capital LLC (previously defined as "Plaintiff"), as set forth in the accompanying Certification and incorporated by reference herein, was a beneficial owner of Changyou common stock at the close of the Merger.

16.     Defendant Changyou is a China-based company incorporated in the Cayman Islands that operates personal computer and mobile application games.  Changyou completed its initial public offering at a price of $16.00 per ADS in April 2009 and was publicly traded on the

NASDAQ Global Select Markets until the close of the Merger.  Its principal executive offices are located at the Changyou Building, Raymon Creative Industrial Park, No. 65 Bajiao East Road, Shijingshan District, Beijing 100043, People's Republic of China.  Its registered office in the Cayman Islands is located at P.O. Box 31119 Grand Pavilion, Hibiscus Way, 802 West Bay Road, Grand Cayman KY1-1205 Cayman Islands.  Its registered agent in the United States is CT Corporation System located at 111 Eighth Avenue, New York, New York 10011.

17.  Defendant Sohu.com Limited (previously defined as "Sohu.com") is a leading Chinese online media, search, and game service group providing comprehensive online products and services on personal computers ("PCs") and mobile devices in China.  Sohu.com's businesses are conducted through the Sohu Group, which consists of Sohu.com, Sogou, and Changyou, and their various subsidiaries.  Sohu.com ADSs trade on the NASDAQ under the symbol "SOHU."

18.  Prior to the Merger, Sohu.com had absolute control over Changyou.  Sohu.com held 1.5 million Class A Ordinary Shares of the Company, directly, and 70.25 million Class B Ordinary Shares of the Company, indirectly through its 100% ownership of Sohu Game.  Together, Sohu.com's stock ownership in Changyou constituted 66.9% of the combined total outstanding equity and 95.2% of the total voting power.

19.  Defendant Sohu.com (Game) Limited (previously defined as "Sohu Game") is a wholly-owned subsidiary of Sohu.com, and indirectly held 70.25 million Class B Ordinary Shares of the Company through its 100% ownership of Changyou Merger Co. Limited.

20.  Defendant Changyou Merger Co. Limited ("Merger Co.") is a direct wholly-owned subsidiary of Sohu Game, and directly held 70.25 million Class B Ordinary Shares of the Company, which constituted approximately 95.0% of the total voting power of Changyou.

5

21.     Defendant Xiao Chen was a director and Chairman of the Special Committee of Changyou prior to the Merger.  He signed the Transaction Statement on behalf of Changyou. Mr. Chen is a citizen of China.

22.     Defendant Dr. Charles Zhang is a director and the Chairman of the Changyou board of directors.  Mr. Zhang also serves as Chairman of the board of directors and Chief Executive Officer of Sohu.com.  He signed the Transaction Statement on behalf of Sohu.com. Mr. Zhang is a citizen of China.

23.     Defendant Joanna Lv (also known as, Yangfeng Lyu) is the Chief Financial Officer of Sohu.com and a director of Sohu Game and Merger Co.  She signed the Transaction Statement on behalf of Sohu Game and Merger Co.

24.     Defendants Changyou, Sohu.com, Sohu Game, Merger Co., Chen, Zhang, and Lv are collectively referred to herein as the "Defendants."

25.     Defendants Chen, Zhang, and Lv are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.      OVERVIEW OF CHANGYOU**

26.     Changyou began operations as the games business unit within the Sohu Group in 2003.  In May 2007, the Sohu Group launched an online game called Tian Long Ba Bu, or TLBB.  Around that time, the Sohu Group reorganized its online games business.  As part of the reorganization, Changyou was incorporated in the Cayman Islands in August 2007 as an indirect wholly-owned subsidiary of Sohu.com, to hold the personal computer ("PC") games business of the Sohu Group.  The Sohu Group transferred all its assets and operations relating to its PC games business unit to Changyou, effective December 2007.

27.     In April 2009, Changyou completed an initial public offering ("IPO") of ADSs in the United States, whereby one ADS represented two ordinary shares of Changyou.  The ADSs were listed on the NASDAQ Global Select Markets under the symbol CYOU until the close of the Merger.

28.     Since Changyou's IPO, Sohu.com was the Company's controlling stockholder through ownership of supervoting Class B shares entitled to 10 votes per share.

29.     Changyou operates three primary businesses: (i) online game business, (ii) the platform channel business, which consists primarily of online advertising, and (iii) the cinema advertising business.  The Company's core business is the online game business.

30.     Changyou is a leading online game developer and operator in China as measured by the popularity of its PC game TLBB and its mobile game Legacy TLBB Mobile.  Changyou also engages in the development, operation and licensing of its massively multi-player online role-playing games ("MMORPGs"), which are interactive games that may be played simultaneously by hundreds of thousands of game players.  Other online games offered by Changyou include TLBB 3D, Xuan Yuan Jian, Legend of Sword, Fairy 5, Fengyun, among others.

31.     Changyou distributes its games through licensing agreements with major distributors in China and other select countries.  For instance, in 2016 and 2018, Changyou entered into agreements with Tencent pursuant to which the Company granted an exclusive license to Tencent to distribute and operate within China the Company's mobile games Legacy TLBB Mobile and Xuan Yuan Jian, which were launched in May 2017 and October 2018, respectively.  The Company also licensed other third-party operators to distribute and operate within China certain other mobile games, including Legend of Sword and Fairy 5.  The

Company also licenses to third-parties select PC games and mobile games in certain overseas markets outside China, including Hong Kong, Macau, Taiwan, Singapore, Malaysia, Thailand, Vietnam, and South Korea.

32.     Changyou operates its online games under an item-based revenue model, meaning game players can play the Company's games for free, but may choose to pay for virtual items, which are non-physical items that game payers can purchase and use within the online games, such as gems, fashion items, magic medicine, riding animals, hierograms, skill books and fireworks, to enhance the game-playing experience.  Game players purchase prepaid game cards or game points, which are used to purchase virtual items.  Changyou sells prepaid game cards to approximately 100 regional distributors, who in turn sub-distribute them to numerous retail outlets, including Internet cafes and various websites, news standards, software stores, book stores, and retail stores.

## II.      <u>BACKGROUND OF THE MERGER</u>

33.     According to the Transaction Statement, discussions that ultimately resulted in the Merger began on July 12, 2019, when Dr. Charles Zhang, Chairman of Changyou and CEO and Chairman of Sohu.com, held a meeting with certain members of Sohu.com's senior management to discuss the feasibility of a possible privatization of Changyou by Sohu.com.

34.     Following retention of U.S. legal counsel, and discussions with China Merchants Bank regarding financing, on September 7, 2019, the Sohu.com board of directors approved submitting to the Changyou board of directors a preliminary non-binding proposal to acquire all outstanding Class A Ordinary Shares not already owned or beneficially owned by Sohu.com in a short-form statutory merger of the Company with Sohu.com for cash consideration of $10.00 per ADS, or $5.00 per Class A Ordinary Share.  This proposal was sent to the Changyou board of directors on September 9, 2019, which also stated that Sohu.com was not interested in selling

its Class A and Class B Ordinary Shares in Changyou or participating in any other transaction involving Changyou.

35.     On September 18, 2019, the Changyou board of directors approved the formation of a special committee (the "Special Committee"), consisting of Dr. Xiao Chen and Mr. Charles Chan, both of whom were purportedly independent from Sohu.com and disinterested in any potential merger transaction, to review and evaluate the Proposal.  The Special Committee retained Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") as U.S. legal counsel and Houlihan Lokey (China) Limited ("Houlihan Lokey") as the financial advisor to the Special Committee.

36.     Between January 16, 2020 and January 23, 2020, Changyou and Sohu.com negotiated an increase in the consideration paid to $10.80 per ADS share, or $5.40 per Class A Ordinary Share.

37.     On January 23, 2020, the Special Committee held a meeting with Houlihan Lokey and Skadden, at which the Special Committee determined that, among other things, the Merger Agreement and the Merger were advisable, fair to, and in the best interests of the Company and its public stockholders (other than Sohu.com) and recommended that the audit committee of the Changyou board of directors and the Changyou board of directors approve the Merger Agreement and Merger in all respects.

38.     On January 24, 2020, the Changyou board of directors adopted resolutions that, among other things, authorized and approved the execution, delivery, and performance of the Merger Agreement and the consummation of the Merger.

39.     On January 24, 2020, the Sohu board of directors and the sole director of each Sohu Game and Merger Co. adopted resolutions wherein the Sohu board of directors and the

sole director of each Sohu Game and Merger Co., among other things, authorized and approved the execution, delivery, and performance of the Merger Agreement and the consummation of the Merger.

40.     On February 14, 2020, Changyou, Sohu.com, Sohu Game, and Merger Co. Limited jointly filed a Rule 13E-3 Transaction Statement under Section 13(e) of the Securities Exchange Act (the "Transaction Statement," together with the Merger Agreement, the "Merger Documents").   The Merger Agreement was attached as Exhibit (d)(1) to the Transaction Statement.   As discussed below, the Merger Documents contained false and misleading statements regarding the existence of dissenters' rights (also known as appraisal rights) pursuant to Cayman Islands law.

41.     On April 17, 2020, Changyou, Sohu.com, Sohu Game, and Merger Co. closed the Merger pursuant to the terms of the Merger Agreement.   Sohu Game, through its depositary institution acting as paying agent, purchased all outstanding Changyou ADSs for $10.80 per share on April 23, 2020.

### III.   THE TRANSACTION STATEMENT WAS MATERIALLY FALSE AND MISLEADING

42.     Rule 13e-3(f) requires the disclosure of "the information concerning appraisal rights required by § 229.1016(f)."  That section (17 C.F.R. § 229.1016(f)) requires "[a] detailed statement describing security holders' appraisal rights and the procedures for exercising those appraisal rights referred to in response to Item 1004(d) of Regulation M-A."

43.     Item 1004(d) of Regulation M-A states that the filer must, "[s]tate whether or not dissenting security holders are entitled to any appraisal rights."  It also states that if shareholders are entitled to any appraisal rights, the filer must "summarize the appraisal rights."  If they are

not entitled to appraisal rights, the filer must "***briefly outline any other rights that may be available to security holders under the law***."

44.    The Merger Documents fail to meet this requirement by giving the false and misleading impression that shareholders did not have any appraisal rights.  This occurs in several places throughout the Merger Documents as described below.

45.    Under a bold header, "Will shareholders be able to assert dissenters' rights (also referred to as "appraisal rights") in connection with the Merger?," the Transaction Statement stated as follows:

> No. Because the Merger will be a "short-form" merger in pursuant to section 233(7) of the Cayman Islands Companies Law and no shareholder vote on the Merger will be held, holders of Class A Ordinary Shares (including holders of Class A Ordinary Shares represented by ADSs) will not be able to exercise dissenters' or appraisal rights under section 238 of the Cayman Islands Companies Law, which applies to mergers under the Cayman Islands Companies Law in which a shareholder vote is held.

46.    The Transaction Statement made essentially the same point in other areas, stating:

> **No Dissenters' or Appraisal Rights**
>
> As the Merger is a short-form merger under section 233(7) of the Cayman Islands Companies Law, and the vote of holders of the Company's Shares (including ADSs) is not required to complete the Merger, the Unaffiliated Security Holders will not be able to exercise dissenters' rights such as are afforded to shareholders of Cayman Islands companies pursuant to Section 238 of the Cayman Islands Companies Law with respect to mergers for which a shareholder vote is required. A copy of Section 238 of the Cayman Islands Companies Law is attached as Exhibit (f)(2) to this Transaction Statement for the information of the Unaffiliated Security Holders.

47.    The Transaction Statement also stated that "the Special Committee and the Changyou Board also weighed the following negative factors," including:

- *No Opportunity for the Unaffiliated Security Holders to Vote on the Merger*. Because the Merger is being effected pursuant to a "short-form" merger under section 233(7) of Cayman Islands Companies Law, the Merger does not require approval by the Company's shareholders. The Unaffiliated Security Holders will not therefore have the opportunity to vote on the Merger. Further, the Unaffiliated Security Holders will not be able to exercise any dissenters' rights under section 238 of the Cayman Islands Companies Law.

48.     These disclosures to stockholders were false, materially misleading, and utterly failed to meet the obligations imposed by the federal securities laws, including Item 1004(d) of Regulation M-A.

49.     Section 238(1) of the Cayman Island Companies Law (2020 Revision) (the "Companies Law") unambiguously states that stockholders ***do have appraisal rights***: "A member of a constituent company incorporated under this Law shall be entitled to payment of the fair value of that person's shares upon dissenting from a merger or consolidation."[1]   No provision of the Companies Law states otherwise.   No provision of the Companies Law distinguishes (as the Merger Documents have) between the sort of appraisal rights available in the context of a "short-form" merger and those available in the context of a "long-form merger." Investors were left to guess why Defendants believed such a distinction applied.

50.     Notably, there is precedent for the fact that shareholders do have appraisal rights in the context of "short form" mergers involving Cayman Islands companies.  For example, in the privatization of Tsingda eEDU Corporation by short-form merger, the Schedule 13E-3 stated: "Holders of Ordinary Shares of TEC will not be entitled to vote their Ordinary Shares of TEC with respect to the Merger, but will be entitled to dissenters' rights in accordance with

---

[1] The term "member" is analogous to the concept of a shareholder in this context.

Section 238 of the Cayman Companies Law."[2]  A complete description of those rights was provided in a formal notice issued as part of the Tsingda eEDU Corporation transaction.[3]

51.     Plaintiff surmises[4] that Defendants' flawed statements were premised on misconstruing the language of Section 238(2) of the Companies Law to somehow deprive stockholders of their appraisal rights.  That section states: "A member who desires to exercise [that person's] *entitlement* under subsection (1) shall give to the constituent company, before the vote on the merger or consolidation, written objection to the action."  Defendants contended that because (a) a "short-form" merger does not require a *shareholder* vote, this clause does not apply and, (b) this clause explains how to exercise appraisal rights, the non-application of this clause means that no member can *exercise* those appraisal rights.

52.     Notwithstanding this potential (and incorrect) reading of the Companies Law, the disclosures in the Merger Documents were materially false, misleading, and incomplete for the following reasons.

53.     The disclosures stated in no uncertain terms that shareholder would not have the ability to "assert dissenters' rights . . . in connection with the Merger."  But that is incorrect, and *at absolute most*, these stockholders did not have a statutorily proscribed method of **exercising** those appraisal rights.  That a statute may not expressly establish the method of exercising a right certainly, it does not follow that stockholders do not have the ability to assert dissenters'

---

[2] Tsingda eEDU Corporation, Schedule 13E-3 (Jan. 24, 2013),
https://www.sec.gov/Archives/edgar/data/1381790/000093041313000305/c72371_13sce3.htm.

[3] Form of Notice of Merger and Dissenters' Rights, Exhibit (a)(2) to Tsingda eEDU Corporation, Schedule 13E-3 (Jan. 24, 2013),
https://www.sec.gov/Archives/edgar/data/1381790/000093041313000305/c72371_ex99-a2.htm.

[4] That investors are required to guess at the supposed rationale for the lack of appraisal rights, even standing alone, rendered the disclosures in the Merger Documents inadequate.  Plaintiff, through its counsel, reserves all rights to explain why any other explanation Defendants may concoct, as to why investors lacked appraisal rights or the means to exercise those rights, is flawed.

rights.  Take for example the commonality of implied causes of action and of statutes expressly providing for legal rights without providing detailed instructions on how to exercise those rights.  Stated another way, *ubi jus, ibi remedium*.

54.     Further, the interpretation that the language of § 238(2) of the Companies Law somehow prevents shareholders from exercising their appraisal rights is not a colorable interpretation of the provision.  The right to appraisal is provided by § 238(1) of the Companies Law and § 238(2) provides a potential deadline for exercising those rights, when certain conditions are met.  The provision states a deadline for acting "before the vote."  The non-occurrence of an event (the vote) that would otherwise trigger a condition precedent to the exercise of some right, simply means that the condition precedent does not apply.  Here, the supposed absence of a vote would simply mean the time requirement of providing written objection "before" the vote does not apply.[5]  It does not follow from this, that an "objection" filed at another time is untimely.[6]

55.     Moreover, the interpretation that the language of § 238(2) of the Company's Law somehow prevents shareholders from exercising their appraisal rights is also not a colorable interpretation of the provision for another reason.  While there is no vote by public shareholders in the case of a "short-form" merger, it does not follow that there is no "vote" that could trigger the language of § 238(2) of the Company's Law.  **If** one were to treat § 238(2) of the

---

[5] In contrast, a hypothetical provision stating, "one must make an objection in the period between the announcement of the vote and the occurrence of that vote," would require the objection to be made during that period.  However, Section 238(2) does not provide a period requiring action.  It only sets a potential deadline that may or may not be triggered if a vote is held.

[6] For the avoidance of doubt, even if there is no deadline whatsoever provided by 238(2), in cases where there is no vote, this would not imply that an indefinite period to object must be allowed.  There may be other limiting factors on the deadline to object, including the doctrine of laches.

Company's Law as a required period for action (rather than a deadline), it would then make far more sense to interpret the term "vote" broadly — to include the corporate act by the majority shareholder effectuating the "short-form" merger — than to read the statute as providing appraisal rights (under § 238(1) of the Companies Law), without providing a method to exercise those rights (under § 238(2) of the Companies Law).  Indeed, § 238(2) of the Companies Law does not even contain the word "stockholder" or "member" as a term limiting the word "vote."  Rather, Defendants unilaterally read "stockholder" or "member" into that statutory provision, without disclosing that fact to stockholders.

56.    Additionally, even assuming Defendants had a colorable basis for their assertions (which they did not), the Transaction Statement's black and white statement regarding the lack of an ability to assert appraisal rights would nevertheless be materially misleading in that it failed to adequately disclose that their aggressively anti-shareholder view was not settled law.  Adequate disclosure would have meaningfully apprised shareholders of their potential appraisal rights and would describe the position of the parties to the transaction regarding those potential rights, as well as the basis for those positions.  Similarly, the Transaction Statement did not even express who – *i.e.*, that of the Company or Sohu.com – took the aggressive position regarding these rights; instead stating the lack of appraisal rights as a matter of settled law.  Indeed, no better evidence exists that the Company voluntary interpreted the Companies Law to deprive stockholders of a procedural mechanism to exercise appraisal rights than the Merger Agreement itself.  Buried in an exhibit to the Transaction Statement, § 2.08 of the Merger Agreement stated as follows:

> No Dissenter's Rights.  Each of the Parties hereto acknowledges and agrees that, because no vote of the shareholders of the Company to approve this Agreement, the Plan of Merger, or the Merger is required and no such vote will be held, holders of the

Shares, including Shares represented by ADSs, will not be able to exercise dissenters' rights under section 238 of the Companies Law.

57.     If the § 238 of the Companies Law clearly deprived shareholders of a procedural mechanism to exercise appraisal rights, which it does not, then the Company would not have had to agree to interpret that statute in such a way that that foreclosed shareholders of  that procedural right.

58.     Even assuming the false statements regarding appraisal rights were literally true (which they were not), the disclosures were still materially misleading and incomplete because the Transaction Statement failed to adequately disclose "any other rights that may be available to security holders under the law," as required by Item 1004(d) of Regulation M-A.  For example, even if § 238(2) of the Companies Law did impede the *exercise* of appraisal rights, which it did not, shareholders could have converted to record holder status and sought relief from an appropriate court to otherwise protect themselves against an unfair merger, including by, for example, (1) requesting the court enjoin the Merger as unfair, (2) bringing a suit for equitable quasi-appraisal type remedies, or (3) bringing a suit requesting other relief that would provide a method of exercising the appraisal rights provided by § 238(1) of the Companies Law.

59.     Finally, adequate disclosures regarding appraisal rights are material to investors' evaluation of the Merger because those disclosures determine the options available to investors when considering those transactions.  A shareholder given the misleading impression that they lack appraisal rights—or not otherwise apprised of their potential appraisal rights—may believe that their only option is to accept the Merger or wait and be forced to accept the Merger.  In fact, the Transaction Statement falsely created a sense of complacency in stockholders by expressly stating:

> As the Company is not soliciting proxies from the Unaffiliated Security Holders or the Selling Management Members (because there will be no shareholder vote with respect to the Merger Agreement, the Plan of Merger, and the Merger), there is nothing else that Unaffiliated Security Holders will need to do in connection with the Merger until the Merger is completed.

60.     Further, the SEC itself has recognized appraisal rights and other remedies available to stockholders as *per se* material, requiring issuers to affirmatively disclose such rights or other remedies regardless of whether such rights or remedies are deemed "material" to the issuer.  *Compare* Item 1004(a)(2)(vii) of Reg. M-A (requiring disclosure of "[t]he federal income tax consequences of the transaction, *if material*") (emphasis added) *to Id.* at (d) (requiring disclosure of appraisal rights or, if no such rights exist, a brief description of other rights available under the law, ***without*** any condition that such rights or remedies be "material").

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this action on its own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of: (a) all holders of Changyou ADSs as of April 23, 2020, and (b) all sellers of Changyou ADSs between February 14, 2020 and April 23, 2020 (the "Class Period"), who were harmed by Defendants' actions described herein (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

62.     This action is properly maintainable as a class action for the following reasons:

(a)     the Class is so numerous that joinder of all members is impracticable. As of December 31, 2019, the end of Changyou's last fiscal year as a public company, there were millions of Changyou ADSs outstanding, which had been offered from time to time since Changyou's IPO;

(b)      the holders of these shares are believed to be geographically dispersed;

(c)      there are questions of law and fact which are in common to the Class and which predominate over questions affecting individual Class members.  The common questions include, *inter alia*, the following:

(i)      whether Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder;

(ii)      whether Defendants violated Section 13(e) of the Exchange Act and Rule 13e-3 promulgated thereunder;

(iii)      whether Defendants violated Section 20(a) of the Exchange Act; and

(d)      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately represent the interests of the Class;

(e)      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(f)      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class; and

(g)      Defendants have acted on grounds generally applicable to the Class with respect to matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## **LOSS CAUSATION**

63.      Plaintiff and members of the Class suffered loss when they voluntarily or involuntarily sold their Changyou securities for less than the fair value of those securities.

64.     During the Class Period, as detailed herein, Defendants made false and misleading statements, violated their affirmative disclosure obligations, and engaged in a scheme to deceive the market and a course of conduct that artificially deflated the prices of Changyou securities, and operated as a fraud or deceit on Class Period sellers of Changyou securities by misrepresenting the ability to assert dissenters' rights (or appraisal rights).  As a result of their sales or exchanges of Changyou securities during the Class period, members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

65.     As a further result of Defendants false and misleading statements in the Transaction Statement, members of the Class who continued to hold shares of Changyou stock on April 17, 2020, the date the Merger closed, were deceived into foregoing their appraisal rights or other rights under Cayman Islands law, which would have provided them with significantly greater value than provided by the Merger.   Accordingly, the deceptive Transaction Statement was an essential link in accomplishing the forfeiture of their legal rights.

## ADDITIONAL SCIENTER ALLEGATIONS

66.     During the Class Period, as alleged herein, the Individual Defendants acted with scienter in that they knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company, Sohu.com, Sohu Game, and Merger Co. during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance and dissemination of such statements or documents as primary violations of the federal securities laws.

67.     The Individual Defendants permitted the release of these false and misleading statements and failed to file the necessary corrective disclosures, which harmed the public stockholders for the benefit of Sohu.com and its subsidiaries.

68.     As set forth herein, the Individual Defendants, by virtue of their control over, receipt, and/or modification of Changyou's materially misleading statements and omissions, and/or their positions with the Company, Sohu.com, Sohu Game, and Merger Co. that made them beholden to and clearly favor the interests of Sohu.com, as the buyer of Changyou ADSs, to accept an unfair and inadequate purchase price for their shares, participated in the fraudulent scheme alleged herein.

69.     Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on sellers of Changyou securities by disseminating materially false and misleading statements and/or concealing material facts. The scheme deceived the investing public regarding the rights of shareholders and caused Plaintiff and members of the Class to sell Shanda securities at artificially deflated prices.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

70.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Further, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or

approved by an executive officer of Changyou, Sohu.com, Sohu Game, and/or Merger Co. who knew that the statement was false when made.

**PRESUMPTION OF RELIANCE**

71.     Plaintiff, and members of the Class, are entitled to the presumption of reliance established by the fraud-on-the-market doctrine, in that:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     The misrepresentations and omissions were material;

(c)     The Company's stock traded in an efficient market;

(d)     The misrepresentations and omissions would tend to induce a reasonable shareholder to misjudge the value of the Company's securities;

(e)     Plaintiff and other members of the Class sold Changyou securities at a time Defendants misrepresented or failed to disclose material facts and before the time the true facts were known to the public, without knowledge of the misrepresented or omitted facts.

72.     At all relevant times, the markets for Changyou securities were efficient for the following reasons, among others:

(a)     As a regulated issuer, Changyou filed periodic public reports with the SEC;

(b)     Changyou was followed by several securities analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered into the marketplace; and

(c)     Changyou securities were actively traded in an efficient market, namely the NASDAQ Select Global Markets, under the ticker symbol "CYOU."

73.     As a result of the foregoing, the market for Changyou securities promptly digested current information regarding Changyou from all publicly available sources and reflected such information in Changyou's stock price.  Under these circumstances, all sellers of Changyou securities during the Class Period suffered similar injury through their sale of Shanda's securities at artificially deflated prices and the presumption of reliance applies.

74.     Plaintiff, and members of the Class, are entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972), because Defendants omitted material information they had a duty to disclose under the Exchange Act and regulations promulgated thereunder.

## COUNT I
### Violation of § 10(b) of the Exchange Act and Rule 10b-5
### Promulgated There Under Against All Defendants

75.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

76.     This Count is asserted pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC against all Defendants.

77.     Defendants, individually and in concert, directly and indirectly, by the use of the means or instrumentalities of interstate commerce, the mails, and/or the facilities of national securities exchanges, violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC.

78.     Defendants made false and misleading statements of material facts, omitted to state material facts which they had an affirmative duty to disclose under the Exchange Act and rules promulgated thereunder, and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

79.     Defendants made their false and misleading statements and omissions and engaged in the fraudulent activity described herein knowingly and intentionally or in such a reckless manner as to constitute willful deceit and fraud upon Plaintiff and the other members of the Class.

80.     Defendants intended to and did, as alleged herein, (i) deceive the investing public, including Plaintiff and members of the Class; (ii) artificially deflated and maintained the price of Changyou ADSs; and (iii) caused Plaintiffs and members of the Class to sell or forcibly sell Changyou ADSs at artificially deflated prices.

81.     Defendants were individually and collectively responsible for making the false and misleading statements and omissions alleged herein and having engaged in a plan, scheme and course of conduct designed to deceive Plaintiff and members of the Class, by virtue of having made public statements and prepared, approved, signed and/or disseminated documents that contained untrue statements of material fact and/or omitted facts necessary to make the statements therein not misleading.

82.     In ignorance of the false and misleading nature of Defendants' statements and omissions, and relying directly or indirectly on those statements or upon the integrity of the market price for Changyou common stock, Plaintiff and the Class voluntarily sold or were forced to sell Changyou ADSs at artificially deflated prices during the Class Period.  But for the fraud, Plaintiff and the Class would not have sold or been forced to sell Changyou ADSs at such artificially deflated prices.   By selling or being forced to sell Changyou ADSs at these artificially deflated prices, Plaintiff and the Class suffered economic losses, which losses were a direct and proximate result of Defendants' fraudulent conduct.

83.     By virtue of the foregoing, Defendants are liable to Plaintiff and the Class for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**COUNT II**
**Violation of Section 13(e) of the Exchange Act and Rule 13e-3**
**Promulgated Thereunder Against All Defendants**

84.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

85.     Defendants engaged in a going private transaction of Changyou, without meeting the disclosure obligations under Section 13(e), and Rule 13e-3.

86.     Section 13(e), and Rule 13e-3 promulgated thereunder require that material information about the transaction be filed with the SEC as described herein.  Defendants failed to file disclosures that met the requirements of those laws and regulations, as described herein. The disclosure failures were material misstatements and omissions under Section 13(e) and Rule 13e-3.

87.     The Merger Documents were essential links in the completion of the Merger.

88.     In the exercise of reasonable care, Defendants should have known that the Transaction Statement was materially misleading and omitted material facts that were necessary to render them not misleading.

89.     The material misrepresentations and omissions in the Transaction Statement were material to Plaintiff and the Class, and Plaintiff and the Class were deprived of the right to make a fully informed decision had such misrepresentations and omissions not existed prior to the close of the Merger.

24

## COUNT III
### Violation of Section 20(a) of the Exchange Act Against
### the Individual Defendants

90.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91.     The Individual Defendants acted as controlling persons of Chanyou, Sohu.com, Sohu Game, and Merger Co. within the meaning of Section 20(a) of the Exchange Act.  By virtue of their positions and their power to control public statements by and about Changyou, Sohu.com, Sohu Game, and Merger Co., the Individual Defendants had the power to control the actions of those entities and their employees.

92.     As alleged herein, the Individual Defendants managed Changyou, Sohu.com, Sohu Game, and Merger Co., and the wrongful conduct alleged herein—including the dissemination of false and misleading statements and omissions through formal corporate processes (such as SEC filings) directly involved the respective entities' senior management. Due to their involvement in this wrongful conduct, the Individual Defendants were at least culpable participants in the wrongdoing and securities violations alleged herein.

93.     In the alternative, if the Individual Defendants were not involved in the wrongful conduct alleged herein, due to the nature of the activity, which occurred at the executive management level at the respective entities, despite their status as senior managers.

94.     By reason of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act, and are liable to Plaintiff and the Class for damages suffered in connection with their sale or exchange of Changyou securities during the Class Period.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representatives under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiff's counsel Labaton Sucharow LLP as Lead Counsel for the Class;

(b)     Determining and declaring that Defendants violated the Exchange Act by reason of the acts and omissions alleged herein;

(c)     Awarding Plaintiff and the Class compensatory damages against all Defendants, jointly and severally, in an amount to be proven at trial together with interest thereon;

(d)     Awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including but not limited to attorneys' fees and costs incurred by consulting and testifying expert witnesses; and

(e)     Granting such other and further relief as the Court deems just and proper.

DATED: December 8, 2020                          Respectfully submitted,

**LABATON SUCHAROW LLP**

/s/ *David J. Schwartz*
David J. Schwartz
Francis P. McConville
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
dschwartz@labaton.com
fmcconville@labaton.com

*Counsel for ODS Capital LLC*

## CERTIFICATION

I, Hilary L. Shane, as Managing Member of ODS Capital LLC ("ODS Capital"), hereby

certify as follows:

1.      I am fully authorized to enter into and execute this Certification on behalf of ODS

Capital.  I have reviewed a complaint prepared against Changyou.com Limited ("Changyou")

alleging violations of the federal securities laws, and authorize the filing of this pleading;

2.      ODS Capital did not trade in securities of Changyou at the direction of counsel or in

order to participate in any private action under the federal securities laws;

3.      ODS Capital is willing to serve as a lead plaintiff and representative party in this

matter, including providing testimony at deposition and trial, if necessary.  ODS Capital fully

understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation

Reform Act, including the selection and retention of counsel and overseeing the prosecution of the

action for the Class;

4.      ODS Capital's sales in Changyou securities during the Class Period are reflected in

Exhibit A, attached hereto;

5.      ODS Capital sought to serve as a lead plaintiff in the following class actions under

the federal securities laws filed during the last three years:

*In re Diamond Resorts International, Inc. Securities Litigation,* No. 2:18-cv-1355 (D. Nev.)
*ODS Capital LLC v. JA Solar Holdings Co. Ltd.,* No. 1:18-cv-12083 (S.D.N.Y.)
*ODS Capital LLC v. Qihoo 360 Technology Co. Ltd.,* No. 1:19-cv-0501 (S.D.N.Y.)

6.      Beyond its pro rata share of any recovery, ODS Capital will not accept payment for

serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement

of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this 3rd day of December, 2020.

Hilary L. Shane
*Managing Member*
*ODS Capital LLC*

**EXHIBIT A**

**TRANSACTIONS IN CHANGYOU.COM LIMITED**

| Transaction Type | Trade Date | Quantity | Share Price | Cost/Proceeds |
|---|---|---|---|---|
| Sale | 3/18/2020 | -20,000 | $10.2406 | $204,812.00 |
| Sale | 3/26/2020 | -2,700 | $10.4844 | $28,307.88 |
| Exchange | 4/23/2020 | -475,843 | $10.8000 | $5,139,104.40 |